# SUPREME COURT,

## STATE OF KANSAS.

## JANUARY TERM, 1874.

PRESENT—HON. S. A. KINGMAN, CHIEF JUSTICE.
HON. D. M. VALENTINE, } ASSOCIATE JUSTICES.
HON. D. J. BREWER,

---

## BOARD OF EDUCATION OF CITY OF ATCHISON v. WILLIAM SCOVILLE, et al.

1. PRACTICE—*Interpleader.* An action in the nature of a "Bill of Interpleader" may be maintained under our system of practice whenever a proper case is made therefor, and whenever the plaintiff has no adequate remedy in the nature of an action at law.

2. ———— *Equitable Remedies.* There is no rule that requires a party to resort to one equitable remedy in preference to some other equitable remedy, where both remedies are equally applicable to the facts constituting the cause of action or defense, and where both are equally available to the parties.

3. ———— *When Interpleader is proper.* The owner of a building owes the contractor for erecting the same a certain sum of money, (the amount thereof not being disputed.) Various other persons claim to have liens upon the fund which the owner of said building owes to the contractor, as follows: certain persons claim as sub-contractors, and that they have mechanic's liens on said building to secure their respective claims; others claim that they are creditors of the contractor, and have garnishment liens on said fund by virtue of attachment proceedings in a justice's court; others claim that they are judgment-creditors of the contractor, and have garnishment liens on said fund by virtue of proceedings in aid of execution before a judge *pro tem.* of the district court. Each of these various persons claims that his own claim is prior and paramount to that of any other person; and in the aggregate these claims amount to vastly more than the amount which the owner of the building owes to the con-

2—13 KAS.

tractor, and the owner of the building cannot well pay any of said claims without great hazard to himself, and several of said claimants are proceeding and about to proceed against the owner of the building to collect in separate actions their respective claims: *Held,* in such a case, that the owner of the building has a cause of action for interpleader against the various claimants of said fund.

4. CONCURRENT REMEDIES; *Code construed.* The remedy given by § 43 of the civil code does not supersede the action of interpleader; but in cases where such remedy might be substituted for the action of interpleader, the two remedies are concurrent.

5. ORDER OF JUDGE, *not a Judgment.* An order of a judge *pro tem.* of the district court in a proceeding in aid of execution under § 490 of the civil code, that a garnishee shall pay over to the judgment-creditor certain money which the garnishee owes to the judgment-debtor, is not a final determination of the liability of said garnishee to pay said money to said judgment-creditor.

6. ORDER OF JUSTICE, *when not Final.* An order of a justice of the peace in an attachment proceeding pending before such justice under § 42 of the justices act, that a garnishee shall pay into court certain money which the garnishee owes to the defendant in the action, is not a final determination of the right of the plaintiff in the action to said money.

*Error from Atchison District Court.*

THE *Board of Education of the City of Atchison,* as plaintiff, brought suit against *Wm. Scoville, H. T. Smith* and *Wm. C. Smith,* as partners, *M. M. Trimmer* and *John F. Thompson,* as partners, *D. P. Blish* and *John B. Silliman,* as partners, *A. B. Decker,* and *Sarah A. Baker,* and also against *Clark & Co.,* and eight others, as defendants. The petition was in the nature of a Bill of Interpleader, reciting that there was in plaintiff's possession the sum of $700.91 due to Clark & Co. or their creditors, being a balance due for building a certain school-house; that there was also due the further sum of $92.47½ for extra work done thereon which the plaintiff believed was due to Clark & Co. or their creditors, but of which defendants Trimmer & Thompson, (who are creditors,) claimed $80.47½; that at November Term 1872 of said district court the defendants Scoville & Smith obtained a judgment by confession against Clark & Co. for $748.58, and afterward on proceedings in aid of execution they obtained an order that

plaintiff pay over to them the sum of $527.22 within thirty days; that before said time had expired Trimmer & Thompson brought an action in the district court against the plaintiff for $428 of said money, claiming that they were entitled to priority of payment, and they also brought an action before a justice for $80.47½ for extra work, and both of said actions were pending and undetermined; that Blish & Silliman, and A. B. Decker, had also obtained judgments against Clark & Co. before a justice, and on proceedings in garnishment had obtained orders for the plaintiff to pay in the former case $124, and in the latter case $45.16; that S. A. Baker had obtained judgment against Clark & Co. before a justice for $45.75, and costs, and threatened to proceed against plaintiff as garnishee; and that all the other defendants were creditors of Clark & Co., as sub-contractors on said work, and they were claiming mechanics' liens for labor or materials, and were all threatening proceedings against the plaintiff for payment out of said fund; that plaintiff had insisted in each of said proceedings that it ought not to be held to pay any of said claimants until all parties should be brought into court, so that their respective rights thereto might be adjudicated together; that plaintiff was not indebted to any of said defendants except as growing out of said contract with Clark & Co. for building said school-house; that plaintiff had not colluded with any of the defendants — and praying that plaintiff be allowed to bring the amount due into court, that all the parties be required to interplead together, and that plaintiff might be discharged from further liability on payment into court of the amount due for the benefit of such of the parties as should appear to the court to be entitled thereto, and that in the meantime the defendants be enjoined and restrained from further proceeding against plaintiff. The petition also showed that the claims of the defendants joined as creditors of Clark & Co. aggregated $1,726.76. This petition was verified by affidavit. To this petition the defendants demurred on general and special grounds, and the court, at the March Term 1873, sustained the demurrers, and ren-

dered judgment in favor of the defendants for costs. To reverse these rulings of the court, and said judgment, the plaintiff brings the case here.

*D. Martin,* for plaintiff in error:

1. Does the remedy of interpleader exist in this state ? The remedy of interpleader in cases of this nature is familiar in equity practice: 2 Story's Eq. Ju., §§ 806, 807, *et seq.;* Van Heythusen's Equity Draftsman, 204, 205, *et seq.;* Adams' Eq.; Story's Eq. Pl., § 291, *et seq.* By the code the *forms* of actions only are abolished, but the same redress may be had as before the adoption of the code: Gen. Stat., 631, § 10; Nash Pl. & Pr., 3; *Kimball v. Connor,* 3 Kas., 430; *Fitzpatrick v. Gebhart,* 7 Kas., 42. But if no other provision of the code sanctions an interpleader by a plaintiff, such a remedy is fully authorized in this case by § 727 of the code. In states having codes like ours it has been held in numerous cases that the remedy of interpleader still exists, notwithstanding the remedy allowed to defendants to bring in new parties: 8 How. Pr., 45, 46; 9 How. Pr., 193, 196, 197; 2 Code Rep., 109; 11 How. Pr., 158, 159; 14 How. Pr., 507.

2. Is this a proper case for interpleader? The petition shows that the plaintiff has in its possession a certain sum of money belonging to Clark & Co., the contractors, or to their creditors, the other defendants, who were sub-contractors and material-men; that plaintiff is not indebted to any of said defendants except on said transaction for building a schoolhouse; that each of the defendants has either actually commenced proceedings, or threatened such, against the plaintiff, to compel payment in full, without any regard to the rights of the claimants, and although plaintiff can only pay each of them in full with great loss to itself, being compelled to pay a great deal more than it owes; that plaintiff is a disinterested party as between the different creditors of and claimants under Clark & Co.; that no judgment has yet been obtained against plaintiff; that plaintiff has not colluded with any of the defendants; that it does not know which of the defendants is

legally entitled to said money, and therefore cannot safely pay it to any one of them, unless they are all made parties to the action, offering to bring the money into court to be paid as shall be decreed by the court after hearing all the claimants as to their respective rights thereto. The petition contained all the averments that are material in such a case. As to the propriety of the remedy in this case we refer to 2 Van Santvoord's Pl., 349, 351; 1 Wait's Pr., 165, *et seq.;* 6 Johns. Ch., 445.

In the garnishee proceedings, the plaintiff was not a *defendant,* and therefore was not entitled to relief under § 43 of the code. It was not a *party,* and could neither prosecute nor defend. All that it could do was to answer under oath all questions put to its officers, and further it could not go. It was only a *witness.* It answered, because under the law it was bound to do so. All reference to the plaintiff having suffered any default, or being guilty of any laches, is out of place and without foundation. Has the plaintiff's right to compel the defendants to interplead been barred or concluded by any adjudication? The court below held that the proceedings in aid of execution in the case of Scoville & Smith v. Clark & Co. were an adjudication which bound the plaintiff herein—that while the order was not a judgment, it was *in the nature of a judgment,* and that it was too late to interplead after that order was made. The court below held that the orders made by the justice in the proceedings in garnishment were not in the nature of judgments, and therefore that they constituted no bar or objection to an interpleader. We contend that the effect and force of each of these orders is the same, and that none of them are judgments against the plaintiffs, nor "in the nature of judgments." And it has frequently been decided that the order made in the proceedings in aid of execution is not a judgment, and that the creditor of the judgment-debtor is not concluded by the proceedings: 6 Ohio St., 254; 11 Ohio St., 323, 569. And this court has held that no execution can issue on such order: 6 Kas., 161. Neither is

the plaintiff concluded by the proceedings in garnishment: 12 Ohio St., 358.

The fact that Trimmer & Thompson commenced suit before this action was brought is no valid objection to this case, but is a circumstance in its favor. It shows that injury to the plaintiff was imminent, and not merely prospective. It is not usual to commence a case of interpleader until the plaintiff is actually in litigation, although it may be proper to do so. In such case, in this state, the party seeking relief from the conflicting claims may elect to bring an action like this, or proceed under § 43 of the code. The remedies are concurrent, and he may have his election: 1 Wait's Pr., 166, 174. In this case the former was the only adequate remedy, as an injunction is part of the remedy of interpleader, and an injunction was necessary in this case to protect plaintiff from vexatious litigation.

*W. R. Smith, Everest & Greenawalt, Horton & Waggener,* and *Thos. Metcalfe,* and *J. L. Berry,* for defendants:

We contend that the court below committed no error in sustaining said demurrers, or in refusing to grant an injunction, as prayed for by plaintiff. Admitting that under the civil code of this state a bill of interpleader would lie in certain cases, we contend that the case at bar, as shown by plaintiff's petition, is deficient in every essential legal element to authorize or constitute such an action. The true origin of jurisdiction of a bill of this nature is, that there is no remedy at law at all; or the legal remedy is inadequate in the given case. And the bill always supposes that the plaintiff is a mere holder of a stake or fund which is equally contested by the other party. And that the respective claims against him are all of the same nature or character; and if the bill shows that any one defendant has a legal right paramount to that of any other, it is demurrable, and is *especially* so where there is no privity (between the parties defendant and plaintiff) of contract or duty. For the true doctrine, supported by authority, is, that in cases of adverse independent title, the

party holding the fund must defend himself as well as he can at law, for otherwise, it would be asking a court to exercise equity jurisdiction upon a controversy between different parties where there is no privity of contract between them, and the plaintiff who calls for the interpleader; and where the claimants assert their rights under adverse titles, and not in privity, and where their claims are of different natures the bill is not maintainable. And the bill would be equally defective if it did not admit and show a title in each of the claimants. For if it in anywise appears from the bill itself that any one of the defendants is clearly entitled to the debt, or any portion thereof, in exclusion of the other, then it is demurrable; and no such bill should be filed except where the plaintiff cannot otherwise be protected from unjust litigation; and then it should be filed immediately after or before the commencement of proceedings against the plaintiff, and should not be delayed until any of the claimants have obtained any legal right as against the plaintiff.

The petition shows that the plaintiffs made a contract with Clark & Co. for the erection of a school-house; that they never complied with the terms of said contract, and that the plaintiff completed the building itself; that the claim of defendants Trimmer & Thompson is based entirely upon an independent cause of action against the plaintiff to the amount of $80.47, and not by reason of any funds in plaintiff's hands which any of the other defendants make any claim upon. The petition shows that certain defendants are seeking to enforce their claims against the plaintiff under the mechanic's-lien law; that the defendants Scoville & Smith have obtained judgment on their claim against Clark & Co., and by proceedings in aid of execution obtained an order of said court against plaintiff before the filing of plaintiff's petition herein, and that said judgment and order now remain of full force. These defendants certainly show a legal right to the payment of a *certain* sum paramount to that of any other of the defendants; and of this the plaintiff had full knowledge long before the commencement of the action at bar. The

petition shows that defendants Trimmer & Thompson have commenced an action in the court below against plaintiff, as defendant therein, claiming the sum of $428 on account of an agreement with plaintiff and defendants Clark & Co., by which Trimmer & Thompson were to receive payment of their sum directly from plaintiff, and that said action was commenced before the petition was filed in this action, and is yet undetermined, and that plaintiff had full knowledge thereof before the commencement of this action. The petition shows that defendants Blish & Silliman before the commencement of this action had obtained judgment against Clark & Co. for the amount of their claim, which certainly shows that as to these defendants they could make no claim against plaintiff on this specific fund. The petition shows that defendant A. B. Decker obtained judgment against Clark & Co. for the amount of his claim, and had instituted proceedings in garnishment, and obtained an order for the payment of his claim against plaintiff before the commencement of this action. The petition also shows that defendant Sarah A. Baker obtained a judgment against Clark & Co. for the amount of her claim, of which plaintiff had full knowledge before commencing this action herein. Now can it be said by this court that the respective claims of the defendants are of the same nature or character, and that each of the defendants claims a right to the identical fund of $700.91? Can it be said that there is a privity between all the defendants and the plaintiff, of contract or duty, in regard to this special fund? Does not the petition show that most of the defendants found their claims upon independent titles and rights? and does not the petition admit that defendants Scoville & Smith have a legal claim upon this fund to the amount of $527.22, paramount to that of any of the other defendants?

If the right to file a bill of interpleader as an *independent* action is recognized under the civil code, then the same rules must exist as were formerly recognized, and which obtained in chancery in such cases. (28 How. Pr., 435.) It would

seem clear that the plaintiff had a perfect and speedy remedy under the provisions of the civil code, and that it was not necessary for it to have resorted to any of the ancient landmarks, or to have navigated its legal craft in the ancient and muddled waters of English equity jurisprudence. It is sufficient for this court to see that the questions involved in this action are fully contemplated and met by our own civil code. For, in the absence of a statute, a bill of interpleader does not ordinarily lie as an independent action except when there is a privity of some sort between all the parties, and where the claim by all is of the same nature and character. (24 Vt., 639.)

The plaintiff, after the commencement of the action of Trimmer & Thompson against it, had a perfect remedy under the provisions of the civil code, upon making affidavit and obtaining an order upon all parties to appear and maintain or relinquish their claims against it. (Code, § 43.) This is a substitution for the ancient bill of interpleader, and provides a *summary* mode of relief in the same cases in which a bill of interpleader was allowed in chancery. This is undoubtedly the remedy that the plaintiff should have resorted to: 15 Abb. Pr., 254; 11 Abb. Pr., 3; 1 Abb. Pr., 260; 4 Duer, 640. And the plaintiff under any circumstances must not by its own act, as in the case at bar, have placed itself in a position to be sued, and must have been ignorant of the rights of the defendants: 16 Abb. Pr., 153; 3 Barb. Ch., 391.

The doctrine of interpleader has certainly no application under the mechanic's-lien law, which doctrine is applicable to all the defendants in this action, who are proceeding to enforce their claims against the owner of the school building: 8 How. Pr., 45; 2 Barb., 60.

Certainly the bill of interpleader will not lie in favor of the plaintiff as against such of the defendants as had obtained rights by service of a notice in garnishment or attachment upon it against the property of Clark & Co.: 41 Barb., 477. And, there being a defect of parties in this action, the demurrer was properly sustained.

The opinion of the court was delivered by

VALENTINE, J.: That an action in the nature of a "Bill of Interpleader" may be maintained under our system of practice, whenever a proper case is made therefor, and whenever the plaintiff has no other adequate remedy, we have no doubt. And we think the action may be maintained whenever the plaintiff has no adequate remedy in the nature of an action at law. The first and main question then for our consideration is, whether a proper case for interpleader has been made out in this particular case. Involved however in this main question are several minor questions, which we shall consider as we proceed. The court below decided upon various demurrers to the petition that the petition did not state facts sufficient to constitute a cause of action as against any of the defendants. And this petition in error is now instituted for the purpose of having that decision reversed. Now, if the petition in the court below did state facts sufficient to constitute a cause of action in favor of the plaintiff and against any two or more of the defendants, the decision of the court below must be reversed as between the plaintiff and those two or more defendants.

1. Interpleader.

The action of interpleader is undoubtedly an equitable remedy, and for that reason principally it cannot be maintained in any case where the party seeking it has another plain and adequate remedy in the nature of an action at law. Indeed, as a rule the action of interpleader cannot be maintained where another plain and adequate remedy has been given by statute; for as a rule, the remedy given by statute is considered as a *legal* remedy, in contradistinction to an *equitable* remedy. But the remedy given by statute may sometimes be an equitable remedy, and when it is, then it does not supersede some other previously-existing equitable remedy unless it has been expressly so enacted, but the second remedy is merely cumulative, and the two remedies are in effect concurrent. There never has been any rule in equity that we are aware of requiring a party to

2. Equitable remedies.

resort to one equitable remedy in preference to some other equitable remedy where the two remedies are equally applicable to the facts constituting the cause of action or defense, and where both are equally available to the parties; and we think no such rule has ever existed. In the present case the plaintiff is a school district. It employed the defendants Clark & Co. to build a school-house. Clark & Co., with the assistance of several sub-contractors, built the school-house.

3. When inter- The school-house now owes Clark & Co., the
pleader is
proper. contractors, $793.38½. This amount does not seem to be disputed. Clark & Co. claim the whole of it. Other defendants claim the same or portions thereof by virtue of being sub-contractors who furnished labor and materials for the school-house, and by virtue of having mechanic's liens thereon. Other defendants claim said fund, or portions thereof, by virtue of being creditors of the contractor, and by virtue of garnishment-liens obtained in attachment proceedings against him in a justice's court. And still another defendant claims the larger portion of said fund by virtue of a garnishment-lien obtained in the district court before a judge *pro tem.* in a proceeding in aid of execution. Clark & Co., (the contractors,) claim directly from the school district. All the other defendants claim under and through Clark & Co., except as to a portion of Trimmer & Thompson's claim, of which we shall speak hereafter; but each defendant claims that his right to said fund is paramount to that of any other defendant. The amount which the defendants claim in the aggregate is vastly more than the plaintiff owes to Clark & Co., and therefore the plaintiff could not well pay the claim of any one of the defendants without great hazard to itself. For the purposes of this case, we shall assume that mechanic's liens may be taken upon school-houses, and such other public buildings. Also, for the purposes of this case, but without expressing any opinion thereon, we shall assume that the action of interpleader does not lie in favor of the owner of a building to compel the holders of mechanic's liens thereon, (contractors and sub-contractors,) to interplead with each other, and with

the contractor, and thereby have determined the extent and priority of their respective liens. And yet there may be cases where the action ought to lie. Under our statutes a promissory note may be given for the amount covered by the mechanic's lien. (Laws of 1871, page 253, § 1; Laws of 1872, page 294, § 1.) And in such a case it is not necessary for the holder of the note to commence an action to enforce the lien until after the note becomes due, (Laws of 1872, page 297, § 4,) although the note may not become due for ten or twenty or any other number of years. Now suppose that there are twenty or more sub-contractors holding notes for various sums due at various times, and the aggregate amount of these notes is vastly more than the owner of the building owes the contractor, or is liable for to the contractor and sub-contractors taken together. And suppose the contractor disputes all these notes, and that each sub-contractor claims that his own note is valid, unpaid, and secured by a lien upon the building, but disputes the notes and supposed liens of all the others. Suppose also that it is claimed that some of the notes were not given for labor or material furnished for the building; that some of them were obtained fraudulently; that some of them are paid; that some of the supposed liens were obtained irregularly, or fraudulently; that some of the holders of the notes are not the real owners of the same, etc.; and suppose the holder of each note intends to contest the lien of every other holder of a note: must the owner of a building keep his money five, ten, fifteen, or twenty years, until some one is ready to sue him, although his debt to the contractor is all the time due and *drawing interest*, which interest he will eventually have to pay? The action or defense given by the mechanic's-lien law, and by § 43 of the civil code, is hardly an adequate remedy in such a case. ¶ For the purposes of this case, and for that only, we shall also assume the following, to wit: 1st.—A party who has a debt coming to him secured by a mechanic's lien, may abandon or waive the mechanic's lien, commence an ordinary action for the debt, sue out an attachment, and garnish any debtor of his debtor. 2d.—A garnishment-lien may be ob-

tained upon a fund already subject to a mechanic's lien held by some other person, but of course the mechanic's-lien will remain prior in right to the garnishment-lien. 3d.—When a party has two claims, one of which is secured by a mechanic's lien and the other is not, he may sue out an attachment and garnish a fund subject to said mechanic's lien, and to various other mechanic's liens held by other parties, to secure one or both of his said claims. But in such a case he of course waives his mechanic's-lien unless he commences a regular action to foreclose the same. We shall also for the purposes of this case assume, (and this is probably a correct assumption,) that a garnishee cannot require an attaching-creditor and the debtor (his creditor) to interplead with each other as to who shall receive the amount due from the garnishee to the debtor. And yet, if there were other persons claiming to hold prior liens on the fund due from the garnishee to the debtor in attachment, the only adequate remedy for the garnishee to protect himself from these conflicting claims would be an action of interpleader. The garnishment-lien attaches when the garnishee is served with notice, (Gen. Stat., 667, § 206; id., 787, § 51,) and continues until the attachment is dissolved, or the plaintiff's claim is satisfied; and there is no provision for the determination of the extent, force, validity, or priority of this kind of lien in an action to foreclose a mechanic's lien. (Laws of 1871, page' 255, § 5.) Indeed, the garnishee in such a case would have no adequate remedy except by the action of interpleader. And hence in such a case the action would lie. It is claimed however that § 43 of the civil code furnishes an adequate remedy. We do not think so. Under that action the holder of 4. Concurrent the fund is not entitled to any remedy until remedies. he is sued, and the commencement of the suit may be postponed almost indefinitely. If the holder of the fund has no remedy except the one given to him by § 43 of the civil code he may be compelled for an almost indefinite period of time to hold said fund always ready to pay the same to the person entitled thereto, and to pay it at any

time when called upon with *accumulated interest*, although the holding of the same may be no benefit to him. His debt due to the contractor, in a case like the one at bar, does not stop drawing interest because others have obtained supposed liens thereon. Sometimes undoubtedly the remedy given by said §43 of the code is an adequate remedy; but even then we do not think that the legislature intended that it should take the place of the action of interpleader. In such cases it was probably intended that the two remedies should be concurrent. Such seems to be the opinion of Mr. Wait as he gathers it from the New York authorities. (1 Wait's Practice, 166, 167, 174. The remedy given by §43 of the code, as applied to cases like this, is in its nature an equitable remedy; and we know of no rule that requires that one equitable remedy should supersede or take precedence of another equitable remedy where both are equally applicable to the case. But it is claimed that the plaintiff in this action (the school district) had already been sued by the defendants Trimmer & Thompson, and that therefore the plaintiff as defendant in that suit had a right under said §43 of the code to have all the other parties brought in and have them interplead as to who should receive said fund, and as to how much each should receive; and therefore, that the plaintiff had another adequate remedy. But if this were true, still the remedy given by said section is an equitable remedy as applied to this case, and therefore the plaintiff still had no adequate remedy *at law*. But it cannot be that said section was intended absolutely to supersede the action of interpleader, even in a case like the one at bar. If such were so it would lead to insuperable difficulties in practice. Suppose that twenty or more different persons should each claim to be entitled to a particular fund, and suppose that one of these persons should sue the holder of the fund for the recovery of the same, and should in the same suit set up twenty or more separate and distinct causes of action and ask judgment on the whole of them: would the holder of the fund be bound to forego his action of interpleader, and in its stead resort to his remedy under

said § 43 of the code? Would he be bound to bring in as co-defendants with himself all the adverse claimants to said fund, and have them litigate their right to said fund while he was at the same time in the same suit on the same trial litigating with the plaintiff the questions arising in the other twenty separate and distinct causes of action in which himself and the plaintiff alone were interested? But suppose there were various other persons, not claimants to said fund, but interested in the subject-matter of some one or more of these various other causes of action set up by the plaintiff against the defendant: must these other persons also all be brought in so that their claims may also all be determined in this same suit? And so on, *ad infinitum.* Each of these different causes of action set up in said petition may be concerning a fund, to each of which there may be twenty or more different claimants. Now suppose that each adverse claimant to one of these funds should commence an action against the holder thereof at about the same time: would the holder be bound under said § 43 to bring in all the adverse claimants into each suit, or could he bring them into one suit only and have the other suits enjoined? And if he could bring them into one only, and have the others enjoined, into which should he bring them, and which should he have enjoined? If these suits were brought in various counties, or in various courts, they could not well be consolidated. Or if there were various other matters to litigate in each one of these suits they could not well be consolidated, although they might be brought in the same court. Now if it be agreed that the holder of the fund may enjoin the litigation concerning this fund in all the suits but one, why not in that one too, and allow him to bring an original action divested of all extraneous matters, and have it determined in that action to whom the fund belongs? After a careful consideration of the whole question we have come to the conclusion that wherever under the former chancery practice a bill of interpleader would lie, an action in the nature of a bill of interpleader will now lie.

With respect to a portion of Trimmer & Thompson's claim

it would seem that the school-district has made itself abso-
lutely liable; or at least Trimmer & Thompson so claim;
and hence with respect to this portion of said claim the action
of interpleader will not lie.   This portion of said claim must
be litigated in another suit.

There are two other questions involved in this case. *First:*
Is an order of a judge *pro tem.* of the district court in a pro-
ceeding in aid of execution, under § 490 of the
civil code, that a garnishee shall pay over to the
judgment-creditors certain money which the garnishee owes
to the judgment-debtor, a final determination of the liability
of said garnishee to pay said money to said judgment-creditor?
*Second:* Is an order of a justice of the peace in an attachment
proceeding pending before him under § 42 of the justices act,
that a garnishee shall pay into court certain money which the
garnishee owes to the defendant in the action, a final determi-
nation of the right of the plaintiff in the action to said
money?   We must answer both of these questions in the
negative.   Neither of said orders is a judgment.   The making
of them is not an adjudication between the parties.   It does
not determine their ultimate rights.   It simply gives to the
creditor the same right to enforce the payment of the money
from the garnishee that the debtor previously had.   It is in
effect only an assignment of the claim from the debtor to the
creditor.   The creditor gains no more or greater rights than
the debtor had, and the garnishee loses no rights.   And the
payment of the money can be enforced from the garnishee to
the creditor only by an ordinary action.   It is not necessary
that an order under § 490 of the civil code be made by the
court, as a court.   It may be made by a judge of the court,
at chambers; and in the present case it was made by a judge
*pro tem.*   Now can it be possible that a proceeding for the
recovery of money may be determined finally, without parties
plaintiff or defendant, without pleadings, before a judge at
chambers, and without a jury?   Final jurisdiction is always
conferred upon courts, and not upon judges at chambers.
Besides, in proceedings for the recovery of money a man's

*5. Order of judge, and justice, not a judgment.*

rights can be determined against his will only by a jury. "The right of trial by jury shall be inviolate." (Constitution, Bill of Rights, § 5.) And no legislative act can abridge or impair that right. But suppose said order is an adjudication, a final determination of the rights of the parties: then there should be some way of directly enforcing it—either by execution against the property of the garnishee, or by imprisonment of his person. Now, it has already been decided in this court, and well decided as we think, that an execution is not allowable in such a case. (*Arthur v. Hale*, 6 Kas., 161, 165.) And we think it is equally clear that the order cannot be enforced by imprisonment of the garnishee. (*Union Bank of Rochester v. Union Bank of Sandusky*, 6 Ohio St., 254; *Edgarton v. Hanna*, 11 Ohio St., 323; *Welsh v. Railroad Co.*, ·11 Ohio St., 569.) "No person shall be imprisoned for debt except in case of fraud." (Constitution, Bill of Rights, § 16.) Now suppose the garnishee owes a debt to the judgment-debtor, as is claimed in the present case. He is ordered to pay it into court, or to the judgment-creditor. He is unable to do it, or indeed he may even refuse to do it. May the court, or judge at chambers, imprison him therefor? If they can, then they may not only imprison him for debt, but they may imprison him forever therefor, or at least until he pays the debt; for there is no provision for his discharge before he pays the debt. Would not this be imprisonment for debt, with a vengeance? But the statute does not seem to authorize the court or judge to order the garnishee to pay the money into court, or to the judgment-creditor. It simply provides that the court or judge may order the money "to be applied toward the satisfaction of the judgment." (Civil code, § 490.) Under this order the money may be paid voluntarily by the garnishee, or it may be collected from him by an ordinary action. This is the view taken of the question by the Supreme Court of Ohio. (*Edgarton v. Hanna*, 11 Ohio St., 323, and other cases above cited.) Section 490 of our code is the same as § 467 of the Ohio code, except that immediately after the words above quoted the following words are inserted

3—13 KAS.

in our code and omitted in the Ohio code, to-wit: "and may enforce the same by proceedings for contempt in case of refusal or disobedience." Now these words probably do not mean that the court may imprison a garnishee for not paying *money which he owes* (a debt) into court, or to the judgment-creditor; but if they do, then we think that they are unconstitutional to that extent. (*Union Bank of Rochester v. Union Bank of Sandusky*, 6 Ohio St., 254, 260 to 262.) Section 473 of the Ohio code is the same as § 498 of our code; and both read as follows:

"If any person, party or witness disobey an order of the judge or referee, duly served, such person, party or witness may be punished by the judge as for a contempt."

This section is about as strong as the new words inserted in § 490 of our code, and yet with this section the supreme court of Ohio made the decisions above cited.

With regard to the order made by the justice in the attachment and garnishment proceedings, we would say that the 6. Order of jus- plaintiff in such proceedings has his remedy to
tice against
garnishee. enforce the payment of the money due from the garnishee by an ordinary action under § 43 of the justices act, and perhaps also by an action or proceeding under § 44 of the justices act; but he has no other remedy. (*Rice & Burnett v. Whiting*, 12 Ohio St., 358.)

In conclusion we would say that we think the petition shows a good cause of action for interpleader. It shows that there are several persons claiming the same thing from the plaintiff; that the plaintiff has no beneficial interest in the thing claimed; that some of the defendants have already instituted proceedings therefor against the plaintiff, and that others threaten so to do; that the plaintiff cannot determine to whom it belongs without great hazard to itself; that the plaintiff has no adequate remedy at law, nor indeed any other adequate remedy; that while the thing in dispute is a debt to Clark & Co., one of the defendants, yet there is no dispute about the amount of the debt; and that while some of the defendants do not claim the whole of the debt, yet that Clark

& Co. do, and the others in the aggregate claim vastly more than the debt.

The judgment of the court below is reversed, and cause remanded with the order that the demurrer to the petition be overruled, and for such other proceedings as may be proper in the case.

All the Justices concurring.